# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION- BAY CITY

IN RE:

| | |
|---|---|
| JONATHAN WILLIAM WILD | Bk. Case No. 14-21888-dob |
| TAMARA JEAN MOORE, | A.P. Case No. 17-02118-dob |
| Debtors | Hon. Daniel S. Opperman |

| | |
|---|---|
| THOMAS MCDONALD, JR. | |
| CHAPTER 13 TRUSTEE | |
| Plaintiff, | Case No. 1:17-cv-13858-TLL-PTM |
| | Honorable Thomas L. Ludington |
| v. | Magistrate Patricia T. Morris |

PAUL WENZLOFF,
JOSHUA FIREMAN,
WENZLOFF & WENZLOFF P.L.C, and
WILDFIRE CREDIT UNION,
    Defendants.

| | |
|---|---|
| Paul Wenzloff & Joshua Fireman | Marilyn Adamczyk |
| Wenzloff & Wenzloff P.L.C. | Attorney for Chapter 13 Trustee |
| Attorneys for Wenzloff & Wenzloff P.L.C. | 303 E. Gary Street |
| 903 North Jackson Street, Bay City, MI 48708 | Bay City, MI 48706 |
| (989) 893-9511 Tel • (989) 893-6988 Fax | (989) 225-8165 |
| wenzloffbankruptcy@sbcglobal.net | marilynadamczyk@yahoo.com |

Michael J. Ryan
Kus, Ryan & Associates PLLC
Attorney for Wildfire Credit Union
2851 High Meadow Circle, Ste. 120
Auburn Hills, MI 48326
(248) 364-3090
mryan@krslaw.biz

## Defendant Wenzloff & Wenzloffs' Motion to Dismiss Plaintiff's Complaint

NOW COMES the Defendant, Wenzloff & Wenzloff P.L.C., by and through its attorneys, Wenzloff & Wenzloff, P.L.C., by Paul Wenzloff, who moves pursuant to F.R.C.P 12(b)(1), 12(b)(2), and (12)(b)(6) to dismiss the Plaintiff's A.P. Complaint in its entirety. In support of its Motion, Wenzloff & Wenzloff states as follows:

1.  Plaintiff has brought forward a series of unsubstantiated and implausible allegations against all of the Defendants.

2.  Plaintiff does not have standing to pursue the A.P. complaint as Chapter 13 Trustee due to the conversion of the underlying bankruptcy case to Chapter 7.

3.  Plaintiff has not established that this Court, nor the Bankruptcy Court, has subject matter jurisdiction over the matters he raises in his A.P. Complaint.

4.  Plaintiff is attempted to raise issues in his A.P. complaint which are moot, and to which no active case or controversy exist.

5.  Plaintiff has failed to state a single claim upon which relief may be granted.

6.  In support of this Motion, Defendant Wenzloff & Wenzloff relies upon the facts and arguments herein and in the accompanying Brief in Support of Defendant Wenzloff & Wenzloffs' Motion to Dismiss Plaintiff's Complaint.

WHEREFORE, Defendant Wenzloff & Wenzloff P.L.C. respectfully requests that this Court dismiss Plaintiff Thomas McDonald's A.P. Complaint in its entirety, with prejudice, grant Defendants costs and reasonable attorney fees incurred in responding to the same, and grant Defendants whatever other relief this Honorable Court believes equity requires.

Respectfully submitted,

DATED:    December _12_, 2017    _____

Paul Wenzloff (P27662)

2

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION- BAY CITY

IN RE:

| | |
|---|---|
| JONATHAN WILLIAM WILD | Bk. Case No. 14-21888-dob |
| TAMARA JEAN MOORE, | A.P. Case No. 17-02118-dob |
| Debtors | Hon. Daniel S. Opperman |

| | |
|---|---|
| THOMAS MCDONALD, JR. | |
| CHAPTER 13 TRUSTEE | |
|     Plaintiff, | Case No. 1:17-cv-13858-TLL-PTM |
| | Honorable Thomas L. Ludington |
|    v. | Magistrate Patricia T. Morris |
| | |
| PAUL WENZLOFF, | |
| JOSHUA FIREMAN, | |
| WENZLOFF & WENZLOFF P.L.C, and | |
| WILDFIRE CREDIT UNION, | |
|     Defendants. | |

---

| | |
|---|---|
| Paul Wenzloff & Joshua Fireman | Marilyn Adamczyk |
| Wenzloff & Wenzloff P.L.C. | Attorney for Chapter 13 Trustee |
| Attorneys for Wenzloff & Wenzloff P.L.C. | 303 E. Gary Street |
| 903 North Jackson Street, Bay City, MI 48708 | Bay City, MI 48706 |
| (989) 893-9511 Tel • (989) 893-6988 Fax | (989) 225-8165 |
| wenzloffbankruptcy@sbcglobal.net | marilynadamczyk@yahoo.com |

---

Michael J. Ryan
Kus, Ryan & Associates PLLC
Attorney for Wildfire Credit Union
2851 High Meadow Circle, Ste. 120
Auburn Hills, MI 48326
(248) 364-3090
mryan@krslaw.biz

---

## **Brief In Support of Defendant Wenzloff & Wenzloffs' Motion to Dismiss Plaintiff's Complaint**

# TABLE OF CONTENTS

TABLE OF CONTENTS................................................................................................ ii

ISSUES PRESENTED................................................................................................ iii

MOST APPROPRIATE AUTHORITIES ............................................................... iv

INTRODUCTION ........................................................................................................ 1

STATEMENT OF FACTS ........................................................................................... 2

STANDARD OF REVIEW .......................................................................................... 9

LAW & ARGUMENT................................................................................................. 10

1.    Plaintiff Lacks Standing to pursue the current Adversary Proceeding against the Defendants. 10

2.    The Court Lacks Subject-Matter Jurisdiction to Entertain Mr. McDonald's Claims............ 12

3.    Mootness of the Plaintiff's request for declaratory and injunctive relief.............................. 14

4.    Count II And Count III Of Plaintiff's Complaint Should Be Dismissed For Failure To State A Claim Upon Which Relief May Be Granted. .......................................................................... 17

5.    Plaintiff's Defamation, Libel, and Slander claims fail to state a claim upon which relief may be granted................................................................................................................................. 21

a.    The Absolute Litigation Privilege bars all of Plaintiff's tort claims. ................................... 21

b.    The Statements Plaintiff Complains of Made By Defendants In The Underlying Litigation Are True, Or Substantially True, And Plaintiff's Attempts To Mischaracterize Them Do Not Change Their Nature.................................................................................................................... 22

CONCLUSION.......................................................................................................... 25

## ISSUES PRESENTED

1.  Whether Plaintiff lacks standing to bring his claims?

2.  Whether the Bankruptcy Court and District Court lack subject matter jurisdiction to review the matters raised by Plaintiff in his A.P. Complaint?

3.  Whether Plaintiff's allegations regarding the *Fuller* Order and underlying settlement agreement are moot due the conversion of the underlying Ch 13 case to Ch 7?

4.  Whether Plaintiff has requested a unconstitutional advisory opinion regarding the *Fuller* Order and underlying settlement agreement in his A.P. Complaint?

5.  Whether Plaintiff's allegations that Defendants abused the legal process failed to state a claim upon which relief may be granted?

6.  Whether Plaintiff's allegations that Defendants defamed, slandered, or libeled him failed to state a claim upon which relief may be granted?

7.  Whether Plaintiff's allegations that Defendants should be sanction under rule 9011 failed to state a claim upon which relief may be granted?

# MOST APPROPRIATE AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, (2009)

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)

*Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.,* 369 F.3d 385, 389 (4th Cir.2004)

*Couch v. Schultz*, 193 Mich.App. 292, 294-295 (Mich App. 1992)

*Dalley v. Dykema Gossett, PLLC*, 287 Mich.App. 296, 788 N.W.2d 679 (2010)

*Earth Island Institute v. Ruthenbeck*, 459 F.3d 954, 961-62 (9th Cir.2006)

*Fialka-Feldman v. Oakland University Board of Trustees*, 639 F.3d 711 (6th Cir. 2011)

*Friedman v Dozorc,* 30 312 NW2d 585 (1981)

*Harris v. Viegelahn*, 135 S.Ct. 1829, 1838 (2015)

*In Re Fuller,* Case No. 13-22203 (E.D. Bankr. 2015)

*In Re Miller*, 730 F.3d 198, 204-205 (3rd Cir. 2013);

*In Re Wild*, Case No. 14-21888 (E.D. Bankr. 2017)

*In re Emoral*, 740 F.3d 875 (3d Cir. 2014).

*In re Cannon*, 277 F. 3d 838 (6th Cir. 2002).

*Mundy v. Hoard*, 216 Mich. 478, 491, 185 N.W. 872 (1921)

*Pagoto v Hancock*, 41 Mich App 622, 623 (1972)

*Sanders v. Leeson Air Conditioning Corp.*, 362 Mich. 692, 695-696, 108 N.W.2d 761 (1961).

*Steinberg v. Buczynski*, 40 F. 3d 890 (7th Circuit 1994).

*Tocco v. Piersante*, 69 Mich.App. 616, 629, 245 N.W.2d 356 (1976).

**Rules**

Fed. R. Bankr. Proc. 7012

Fed. R. Bankr. Proc. 9011

Fed.R.Civ.P. 12(b)(1)

Fed.R.Civ.P 12(b)(2)

Fed.R.Civ.P. 12(b)(6)

## **Statutes**

11 U.S.C. § 348(e)

11 U.S.C. § 323

28 U.S.C. § 157

## INTRODUCTION

Plaintiff Thomas McDonald's, as Chapter 13 Trustee, ("Plaintiff") asserts claims against the Defendant Wildfire Credit Union ("Wildfire"), and the law firm and individual attorneys who represented Wildfire in a Chapter 13 Bankruptcy case ("Wenzloff & Wenzloff"), alleging that the Defendants engaged in a series of tortuous conduct against Plaintiff, including: Slander, Libel, Defamation, and Abuse of Process.   Plaintiff also asks the Court for declaratory and injunctive relief in regards to whether a settlement agreement to which the Plaintiff was a party, which was subsequently codified in a Court Order, applies to the Plaintiff.   Finally, Plaintiff seeks sanctions against all of the Defendants on the ground that they violated Rule 9011.

Defendant contends that the Court should dismiss the entirety of the Plaintiff's Complaint with prejudice.   As described in greater detail in the statement of facts which follows, the Chapter 13 Trustee and Wenzloff & Wenzloff, on behalf of their creditor clients, had long standing conflicts with regards to the proper protocol to be followed in conjunction with the post-confirmation purchase of vehicles in Chapter 13 cases.   Ultimately, in the case of *In Re Woodrow Fuller*, Judge Opperman ordered these issues to be mediated with Chief Bankruptcy Judge Philip J. Shefferly to serve as the mediator.   A settlement agreement was reached and signed by the Chapter 13 Trustee and his counsel at the time, Rozanne Giunta. Exhibit 1. The Settlement imposed certain obligations on the Chapter 13 Trustee before he would be authorized to sign or stipulate to an Ex-Parte Motion for the financing and purchase of a post-confirmation vehicle.   The terms of the settlement agreement were subsequently codified in a Court Order signed by Judge Opperman on May 26, 2015. *Id.*

In the case at issue, *In Re Wild*, Case No. 14-21888,  the Chapter 13 Trustee signed a Ex-Parte Motion which was in clear contravention to the requirements imposed by the settlement agreement and bankruptcy court order.  The Credit Union in this case raised the Trustee's violation of the settlement agreement and court order in this case, asserting that the underlying financing and purchase of the vehicle in this case should be set aside.  The Trustee responded that the prior settlement agreement and court order are not, in his opinion, binding on him and that the Credit Union and counsel for the Credit Union should be sanctioned for their assertions set forth in their pleadings, specifically that the Trustee knowingly and intentionally violated a court order in this case.

1

Now, we find the present Adversary Proceeding ("A.P.") before the Court.  Plaintiff does not have standing to be involved in this case, as the Ch. 13 case to which he was acting as Trustee has been converted to a Chapter 7 case, and his role as Trustee has been terminated. As will be discussed in depth below, Plaintiff's defamation, libel, and slander allegations are completely barred by the absolute litigation privilege to which all Defendants enjoy in regards to their statements made during the course of the prior litigation, and the pleadings to which Plaintiff complains are completely supported by the facts.  Defendants Paul Wenzloff, Joshua Fireman, and Wenzloff & Wenzloff, acted properly within their role as zealous advocates for their client, and at no point abused legal process or acted without their client's authority. Plaintiff's attempt to relitigate a prior case to which he agreed to and signed a settlement agreement in, *In Re Woodrow Fuller*, has no basis in law or fact, and the issues he raises in this regard are moot.  Finally, there is no basis for sanctions against Defendants acting in their proper role as advocates for their clients, because the Defendants did not violate Rule 9011, Rule 9011 is not a basis for a A.P. cause of action, and because the Trustee failed to comply with the requirements under Rule 9011.

Therefore, Defendant Wenzloff & Wenzloff requests that this Honorable Court dismiss Plaintiff's Complaint in its entirety with prejudice, and grant the Defendants costs and reasonable attorney fees incurred in responding to the same.

## STATEMENT OF FACTS

If during the course of a Chapter 13 bankruptcy case a debtor wishes to obtain a post-petition loan (to, for instance, purchase a new car), local bankruptcy rules provide that the debtor must first obtain permission for such borrowing from the Chapter 13 Trustee and the Bankruptcy Court.  A debtor typically obtains such permission by having the Chapter 13 Trustee sign a stipulation for an ex-parte order allowing the debtor to obtain the loan in question.  After submitting the stipulation and ex-parte order to the Bankruptcy Court, the Court would (if appropriate) sign the order, often within 24 hours of receipt.  The newly acquired loan would then be paid by the Trustee through the plan, sometimes to the disadvantage of prior existing unsecured claimholders (who would otherwise receive the funds being directed towards the newly inserted vehicle lender).

For years, the ex-parte motions signed by the Chapter 13 Trustee contained very little information about the actual loan transaction or vehicle purchase.  Often no reason would be

2

provided as to why the debtor needed to purchase a new vehicle. This lack of information placed pre-existing creditors at a disadvantage in determining whether such borrowing was appropriate or even in the estate or debtor's best interest. In 2014, Financial Edge Community Credit Union challenged one of these ex-parte motions. After months of litigation, on May 26, 2015, pursuant to a Mediation Hearing conducted by Chief Judge Phillip Shefferly, a Settlement Agreement was reached which required the Chapter 13 Trustee to review and confirm that all Ex-Parte Motions to Borrow for the Purchase of Post-Confirmation Vehicles contain specific information which was deemed necessary for the benefit of the Trustee, the Court, and all interested parties, to have as a condition precedent to determining the propriety of the proposed vehicle purchase. See Exhibit 1. The Chapter 13 Trustee signed the Settlement Agreement, and this Court subsequently entered an Order (the "Fuller Order") adopting the terms of the Settlement Agreement in total and retaining jurisdiction to review and enforce the terms of the Order entered in *In Re Fuller*, Case No. 13-22203. *Id.*

The agreement and court order stated in part: "The Trustee shall hereinafter require the following information and terms to be present and included in each pleading seeking court approval of post-confirmation financing to which the Trustee approves and stipulates in each and every Chapter 13 case administered by this Trustee..." *Id.* In effect, the Settlement Agreement and this Court's Order imposed a duty on the Trustee to ensure that certain information deemed necessary for a knowing decision concerning a proposed purchase be contained in a Ex-Parte Motion for post-confirmation vehicle purchase before the Trustee would be allowed to approve or stipulate to the same for submission to the Court. *Id.*

The Chapter 13 Plan in the above captioned bankruptcy case (the "Wild bankruptcy") was confirmed on October 24, 2014. Subsequent to confirmation, the Debtors fell in arrears on their Chapter 13 plan payments, causing the Trustee to file a Motion to Dismiss this Chapter 13 case on December 5, 2015. In response to the Trustee's Motion to Dismiss, the Debtors were placed on probation and agreed to increase the Chapter 13 plan payments to cure the arrearage. On April 6, 2017, while still in arrears on their Chapter 13 plan payments, the Debtors purchased a 2014 GMC Acadia. See Exhibit 2. All of the vehicle purchase documents were signed by the Debtors on April 6, 2017. *Id.*

A week later, Debtors' counsel filed an Ex-Parte Motion for an Order Granting Debtors Authority to Finance the Purchase of the 2014 GMC Acadia (the "Ex-Parte Motion"). Exhibit 3.

The Ex-Parte Motion was signed by Debtors' counsel and by the Chapter 13 Trustee. The Ex-Parte Motion reviewed, approved, and signed by the Chapter 13 Trustee in this case did not contain the information mandated by the settlement agreement from *Fuller*, nor the *Fuller* Order. In addition, the Ex-Parte Motion in this case affirmatively stated that the *Fuller* disclosures were contained in it, which was not true. See Exhibit 1 & Exhibit 3.

Specifically, pursuant to the *Fuller* settlement and Bankruptcy court order the Trustee was not to approve or stipulate to pleadings seeking Court approval of a post-confirmation financing if the pleading did not contain a affirmative statement that the Debtor(s) were not in arrears on their chapter 13 plan payments at the time of borrowing. Exhibit 1. In *Wild*, the Ex-Parte Motion specifically acknowledged that the Debtors were in arrears on their plan payments. Exhibit 3. In addition, the settlement agreement and court order required that such post-confirmation pleading contain an explanation as to why the debtor(s) need to purchase the vehicle. Exhibit 1. In *Wild*, the Ex-Parte Motion to borrow did not contain any explanation as to why the debtors needed to purchase the 2014 GMC Acadia. Exhibit 3.

Perhaps most importantly, the settlement agreement and court order binding upon the Trustee required that he not authorize or stipulate to a Ex-parte Motion to Borrow unless it contained "e. A statement of explanation of whether the proposed purchase wil [sic] require an increased monthly payment from the debtor(s) <u>and, if so, an explanation as to how or where the debtor(s) will acquire the funds necessary to make the increased payment</u>." (emphasis added), Exhibit 1. In *Wild*, the debtors, who were already in arrears on their plan payments, were going to be required to increase the plan payment by $604.13 to pay for the purchase of the new vehicle. Exhibit 3. In *Wild*, the Ex-Parte Motion to borrow which the Trustee authorized and signed to be submitted to the Court did not contain any explanation as to how or where the debtors were going to acquire the funds necessary to make the increased payment. Exhibit 3.

It is important to note that under Bankruptcy protocol as set forth in the Chapter 13 Model Plan a debtor can obtain a ex-parte order for the financing of the purchase of a vehicle post-confirmation through one of two methods. The debtor, through counsel, can submit a Ex-Parte Motion to the Chapter 13 Trustee, and request that the Chapter 13 Trustee sign and stipulate to the same. If the Chapter 13 Trustee signs and stipulates to the same and the Ex-Parte Motion is then submitted to the Court, then based upon the Trustee's signature, the Court will enter a order permitting financing requested. If the Trustee does not agree to sign and stipulate

4

to the Ex-Parte Motion, then the debtors only option is to set the matter on for a hearing before the Court and request the Court approve the proposed financing after hearing and notice to all creditors or other interested parties. Consequently, obtaining the Chapter 13 Trustee's signature on a Ex-Parte Motion as just described is the lynch pin to obtaining a quick order approving the financing.

Without the Chapter 13 Trustee's signature, the debtor has to follow the longer and more complicated path of scheduling a hearing before the Court. As a result, if the Chapter 13 Trustee had not signed the Ex-Parte Motion filed in the underlying Chapter 13 case, the debtors would have had to have scheduled the matter for a hearing before Judge Opperman, and Creditors, including Wildfire Credit Union, would have had the opportunity to have explored in greater depth the underlying facts and circumstances to determine if the purchase of the vehicle was justified and necessary.

Within 24 hours, an Order was entered pursuant to the Ex-Parte Motion, but a post-confirmation claim was not filed by Santander, the post-confirmation creditor in this case, until June 2, 2017. On June 8, 2017, Wildfire Credit Union (hereinafter called "Wildfire") filed an objection to the allowance of the post-petition secured claim by Santander with the Bankruptcy Court. Exhibit 4. In conjunction with the Notice of filing the post-petition claim, Debtors' counsel amended the bankruptcy matrix to add Santander as a creditor and provided an address for Santander. Exhibit 5. Counsel for Wildfire served their objection to the allowance of the post-petition claim upon Santander at the address provided by Debtors' counsel. *Id.*

Despite having received notice of Wildfire's objection to the claim and having been served with the same, neither the Debtors, nor Santander, nor the Chapter 13 Trustee filed an objection or response to Wildfire's objection, and consequently, the Court canceled the hearing set for July 20, 2017. Several days later, counsel for Wildfire submitted a Certificate of No Objection and a Order was entered disallowing the post-petition claim of Santander. Exhibit 6. On July 24, 2017, the Chapter 13 Trustee filed a Motion for Reconsideration with Memorandum of the Order disallowing Santander's claim, which the Court granted ex-parte without the opportunity for a response or a hearing. Exhibit 7. Subsequently, the Chapter 13 Trustee, without having seemingly any standing to do so, and arguably acting on behalf of another party, the secured creditor Santander, filed a response to Wildfire's objection to the allowance of Santander's post-petition claim, requesting that the Court deny Wildfire's objection to the claim

5

and award the Trustee attorney fees and sanctions against Wildfire for filing the objection. Exhibit 8.

In this response, the Chapter 13 Trustee accused Wildfire of objecting to Santander's claim in this matter merely for the purpose of harassing Santander and other parties, and that Wildfire's objection contained "…misleading, incorrect, baseless, unfounded and inaccurate representations in its Objection…" *Id.* The Trustee further accused counsel for Wildfire personally of continuously objecting to post-petition car purchases improperly, in an effort to harass parties, and opened the door to the issues currently before the Court by suggesting that the Fuller Order be set aside. *Id.* It should be noted that the Trustee has failed to provide any evidentiary or legal support for these false allegations against Wildfire, or counsel for Wildfire, at any time subsequent to their response to Wildfire's objection.

On August 28, 2017, counsel for Santander filed its own response to Wildfire's objection to its claim. Exhibit 9. Shortly thereafter, Wildfire filed a brief in support of their objection to Santander's claim, principally to flush out its argument and defend itself from the Trustee's false allegations. Exhibit 10. Wildfire also provided evidence and argumentation that the underlying Ex-Parte Motion stipulated to by the Trustee had failed to comply with the Fuller Order, and as such, the Order Granting the Debtors Authority to Finance the Purchase of a 2014 GMC Acadia should be set aside due to the failure of the Ex-Parte Motion to comply with existing Court Orders. *Id.* Wildfire also argued that the Ex-Parte Motion at issue was an attempt by the Debtors and Trustee to obtain an improper *nunc pro tunc* approval of a purchase of a vehicle and financing that was already effectuated before the Ex-Parte Motion to Borrow was even filed. *Id.* Finally, Wildfire provided evidence of another case where the Trustee had stipulated to an Ex-Parte Motion which failed to comply with the Fuller Order, to show that the Trustee may have continuously been violating the Fuller Order. Exhibit 11.

Shortly after filing the aforementioned brief, Wildfire filed a Motion for Relief from Order Granting the Debtors Authority to Finance the Purchase of a 2014 GMC Acadia, relying primarily on the evidence and argumentation already provided in the Brief in support of their objection to Santander's claim. Exhibit 12. In this Motion, Wildfire asked for the Order Granting the Debtors Authority to Finance the Purchase of a 2014 GMC Acadia to be set aside or otherwise vacated. *Id.* Wildfire primarily argued this relief should be granted pursuant to Bankr. R. 9024, which applies F.R.C.P 60(b) to bankruptcy proceedings, for the same reasons laid out in

its previous pleadings, and because its prior arguments made clear that the Trustee had misrepresented to the Court that the Fuller Order had been complied with in the Motion at issue, an issue under F.R.C.P. 60(b)(3). *Id.*

Despite the significant factual and legal support already provided by Wildfire in support of its arguments, the Trustee filed a Motion to Strike Wildfire's Motion for Relief from Order Granting the Debtors Authority to Finance the Purchase of a 2014 GMC Acadia, asserting that Wildfire had made scandalous and unsupported allegations of wrongdoing by the Trustee. Exhibit 13. After this Motion, the Trustee continued to attack Wildfire in several more pleadings, including a Motion for a Protective Order, because the Trustee claimed he was quasi-judicially immune to the discovery ordered by the Bankruptcy Court.

Now that Wildfire was being accused of making false and unsupported claims, counsel for Wildfire filed a series of responses and supplemental briefs in support of their position. See Exhibit 14, 15, 16. While these various issues were being raised, discovery was opened by the Bankruptcy Court and was conducted by the various parties in the matter. During discovery, Defendants discovered additional significant problems with the Ex-Parte Motion. The Defendants discovered that the debtors were not paying the plan required direct child support payments, and in fact the child support arrearage owned by the debtors had increased from approximately $14,000.00 at the start of the plan to $27,000.00 at the time of conversion. See Exhibit 17, 19, 21. Therefore, the debtors were not in arrears of $346.45 as they represented in their Ex-Parte Motion, but were in fact in arrears thousands of dollars at that time. *Id.* As such, it became clear that it was simply was not financially possible for the debtors to acquire this new vehicle and make the payments required by the chapter 13 plan as confirmed, as was borne out by the conversion of the case to Chapter 7. In addition, in the underlying *Wild* case, the Trustee paid disbursements to Santander USA, the post-confirmation creditor in this case, despite the fact that Santander's claim had not been allowed per 11 U.S.C. Section 1305, which was also a issue covered by the settlement agreement and court order from *Fuller*. See Exhibit 1.

Meanwhile, the Trustee deposed the CEO of Wildfire, seemingly for no purpose other than to harass Wildfire as counsel for Wildfire had informed the Trustee that Wildfire's CEO had no knowledge of this particular case. See Exhibit 18. Despite the uselessness of the deposition conducted by the Trustee on Wildfire's CEO, the Trustee proceeded to subpoena 3 more

employees of Wildfire for depositions, and subpoenaed a massive number of irrelevant documents.

Once Wildfire discovered that the Debtors were not complying with the Ch. 13 plan as confirmed, Wildfire believed that the underlying Ch. 13 bankruptcy case would have to be converted or dismissed, and in response to the Trustee's absurd discovery requests, Wildfire filed a Motion to Quash in which Wildfire laid out the newly discovered evidence and argued that the Trustee's discovery was both irrelevant, and moot as the case would now be converted to a Ch. 7 or dismissed. See Exhibit 19. Not long afterward, the Bankruptcy Court ordered a status conference be held to discuss the newly discovered evidence that Wildfire had presented in their Motion to Quash. The Bankruptcy Court determined at this conference that the underlying Ch. 13 case would either need to be modified, converted, or dismissed as a result of the new information before the Court. See Exhibit 20. The Bankruptcy Court also noted on the record during the underlying conference that Wildfire's underlying Objection and Motion to Vacate would be mooted by the conversion or dismissal of the Ch. 13 case, and therefore the Court believed that all of the other issues raised by the parties would also be mooted as a result. See Docket Entry #121 of underlying bankruptcy case, see also Exhibit 21.

Despite the Bankruptcy Court's clear guidance on the issues then before the Court, the Trustee proceeded to file the current A.P. complaint against Wildfire and counsel for Wildfire both as a firm and individually, claiming that Wildfire and counsel for Wildfire had committed misconduct by pursuing their position in the underlying Ch. 13 case. See Plaintiff's Complaint. Less than three hours after the Trustee filed his A.P., the Debtors converted the underlying case to a Ch. 7 case, the Trustee's duties as Trustee were terminated, and a new Ch. 7 Trustee replaced him. See Exhibit 22.

The Bankruptcy Court then ordered a show cause hearing in the A.P. case on why it should not dismiss the Plaintiff's complaint due to the conversion of the case to Ch. 7 and the standing and jurisdictional issues that resulted from this conversion. See Exhibit 23. The day before the show cause hearing, the Trustee filed a Motion for withdrawal of reference, asking this Honorable Court to hear the A.P. because of a false claim of a conflict of interest by the Bankruptcy Court and the position taken by Wildfire in the underlying case. The Bankruptcy Court held a brief hearing on a potential settlement agreement at the same date and time as the

8

show cause hearing had been set, but no agreement was reached See Docket Entry #12 of underlying A.P. case and minute entry thereafter.

## STANDARD OF REVIEW

A. <u>Fed. R. Civ. P. 12(b)(2)</u>

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Insurance Company of America,* 511 U.S. 375, 377 (1994). The basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1332 (diversity of citizenship jurisdiction). *Arbaugh v. Y&H Corporation,* 546 U.S. 500, 513 (2006). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen,* 511 U.S. at 377 (internal citations omitted). "[W]hen subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction in order to survive the motion to dismiss." *Giesse v. Secretary of Department of Health and Human Services,* 522 F.3d 697, 702 (6th Cir. 2008).


B. <u>Fed. R. Civ. P. 12(b)(6)</u>

Fed. R. Bankr. Proc. 7012 applies Fed. R. Civ. P. 12(b)(6) to Adversary Proceedings. Under Fed.R.Civ.P. 12(b)(6), the Court must accept as true all factual allegations in the pleadings, and any ambiguities must be resolved in that plaintiff's favor. See *Jackson v. Richards Med. Co.*, 961 F.2d 575 (6th Cir. 1992). While this standard is decidedly liberal, it requires more than a bare assertion of legal conclusions. See *El-Jabazwe v. Wells Fargo Home Mortgage*, (E.D. MI 2013) 13-10310. Thus, the plaintiff must make "a showing, rather than a blanket assertion of entitlement to relief" and "factual allegations must be enough to raise a right to relief above the speculative level" so that the claim is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "To survive ... a complaint must contain sufficient factual matter, accepted as true, to `state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). The plausibility standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965.

9

## LAW & ARGUMENT

1. Plaintiff Lacks Standing to pursue the current Adversary Proceeding against the Defendants.

"Article III of the Constitution limits federal courts' jurisdiction to `Cases' and `Controversies.'" *Clapper v. Amnesty Intern. USA,* 133 S.Ct. 1138, 1146, 185 L.Ed.2d 264 (2013). "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Id.*(internal citations and quotations omitted). "In sum, when a plaintiff's standing is brought into issue the relevant inquiry is whether, assuming justiciability of the claim, the plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision." *Simon v. E. Ky. Welfare Rights Org.,* 426 U.S. 26, 38, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). "To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper,* 133 S.Ct. at 1146 (internal quotation and citations omitted).  "The party invoking federal jurisdiction bears the burden of establishing these [standing] elements." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Moreover, each element must be proven with the requisite "degree of evidence required at the successive stages of the litigation." *Id.* Here, Plaintiff bears the burden to establish standing, and as this case is before the Court on a motion to dismiss, the inquiry is whether Plaintiffs have adequately pleaded facts which, if true, plausibly establish standing.

Mr. McDonald is no longer the trustee in the underlying bankruptcy case as a result of the Debtors converting their case from a Chapter 13 to one under Chapter 7.  See Exhibit 22.  The Bankruptcy Code clearly provides that at the time of conversion from a Chapter 13 to a Chapter 7, the Chapter 13 trustee's service is terminated.  11 U.S.C. §348(e) states that "Conversion of a case under section 706, 1112, 1208, or 1307 of this title terminates the service of any trustee… that is serving in the case before such conversion."  The United States Supreme Court has further held that conversion terminates all services of a Chapter 13 Trustee, even the disbursement of funds on hand to creditors.  *Harris v. Viegelahn,* 135 S.Ct. 1829, 1838 (2015) ("The moment a case is converted from Chapter 13 to Chapter 7, however, the Chapter 13 trustee is stripped of authority to provide that "service."). The Chapter 7 trustee takes the reins upon conversion – "the case is placed under Chapter 7's governance, and no Chapter 13 provision holds sway. § 103(i)." *Id.* A terminated Chapter 13 trustee no longer holds the ability "to sue and be sued" under 11

10

U.S.C. § 323 and any interests in the estate are transferred and vested in the Chapter 7 trustee. Thus, now that the case has been converted to a Chapter 7 case, Mr. McDonald is no longer the Trustee in this matter but is solely an individual third party. He therefore lacks standing to pursue an adversary proceeding against another third party as the Chapter 13 Trustee.

In addition to the problem that Mr. McDonald has no standing due to the conversion of the case, a Trustee is also confined in his or her power to sue to enforce the entitlements of a debtor, and by extension, an estate. See *In re Emoral*, 740 F.3d 875, 885 (3d Cir. 2014). It has been widely held that a trustee cannot bring actions for claims for which the relief does not inure to the benefit of the estate or to all creditors. See *In re Cannon*, 277 F. 3d 838 (6th Cir. 2002). That is, a bankruptcy trustee may only bring a cause of action that will materially benefit the bankruptcy estate; the trustee cannot initiate "personal claims" (claims on behalf of an individual creditor, for instance). *Steinberg v. Buczynski*, 40 F. 3d 890 (7th Circuit 1994).

Accordingly, a trustee cannot bring an action to remedy or enforce his own personal grievances, as Mr. McDonald seems to be attempting to do here. In his adversary proceeding, Mr. McDonald is pursuing causes of action which are not designed or intended to provide relief for or benefits to the Debtors or the Bankruptcy Estate, but is seeking only relief for and on behalf of himself, his attorney, and his office. Indeed, the primary goal of the Trustee's complaint is to seemingly protect his reputation and image, and attack the reputation and image of the Defendants. But Mr. McDonald cannot bring an action as Chapter 13 Trustee, because he no longer has any capacity to sue as the Trustee, and also because all of the claims set forth in the complaint are grievances that the Trustee feels were against him personally, and any damages or relief that would result from these claims would likewise accrue to Mr. McDonald personally, not the Debtors or the Estate.

Another serious standing problem in this matter is that Mr. McDonald has not alleged a single "injury in fact". He alleges reputational damage, among other even more cryptic damages like impairing his ability to act as Trustee, as a legal conclusion, but provides no explanation or facts which support how his reputation was damaged, for example, among whom his reputation would suffer and how his reputation would suffer as a result of Defendants' purported actions. The Trustee even admits in his complaint that almost the entirety of his $100,000.00 "damages" are actually a request for sanctions against the Defendants, not actual damages, presumably because he has not suffered any actual damages. See Plaintiff's complaint. Mr. McDonald also

11

fails to argue that any injury to him is actual or imminent, as once again he makes no claim or factual assertion of how Defendants' actions actually injured him or his office.   Simply, Mr. McDonald has failed to allege that the "damages" he has suffered are anything more than hypothetical, and Plaintiff's complaint should also fail on this ground.

Finally, there is one last standing issue in this case. When a Chapter 13 case is converted to a Chapter 7 case, the new trustee (in this case, Daniel Himmelspach) is automatically substituted for the since-terminated Chapter 13 trustee. Fed. R. Bankr. P. 2012. Theoretically, the Chapter 7 trustee could maintain this adversary proceeding, creating a problem of who should control the action that Mr. McDonald is asserting. No matter who is the proper party as Plaintiff in this A.P., none of Plaintiff's claims would provide any benefit to the Debtors' estate and this appears to be a no-asset Chapter 7 case, and therefore, it would be purposeless for the Chapter 7 Trustee to pursue this A.P. further as the entire matter is essentially moot.

Accordingly, Mr. Thomas McDonald, the former Chapter 13 Trustee in this matter, lacks standing to pursue the above-referenced adversary proceeding, and this Honorable Court should dismiss the A.P. complaint with prejudice.

## 2.  The Court Lacks Subject-Matter Jurisdiction to Entertain Mr. McDonald's Claims

Even if the Court found that Mr. McDonald had standing to pursue the claims in the adversary proceeding, both the Bankruptcy Court and the District Court lack subject matter jurisdiction to hear this matter.  A bankruptcy court's jurisdiction is limited by 28 U.S.C. 157 to "core" matters and "related to" matters. Core matters are those which "either invoke a substantive right created by federal bankruptcy law or one which could not exist outside of the bankruptcy." *Lowenbraun v. Canary*, 453 F.3d 314, 320 (6th Cir.2006)). By contrast, ordinary state law claims qualify as "related to" claims under 28 U.S.C. §157(c) and must be submitted by the Bankruptcy Court to the District Court as proposed findings of fact and conclusions of law rather than final orders. These evaluations are made claim by claim.

For a bankruptcy court to have jurisdiction over a civil action which is not a core matter, the civil action must meet the definition of a "related" proceeding under 28 U.S.C. §1334.

> The definition of a "related" proceeding under Section 1334(b) was first articulated by the Third Circuit in *Pacor*. As stated in that case, the "usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any

> effect on the estate being administered in bankruptcy." *Pacor,* 743 F.2d at 994.
> An action is "related to bankruptcy if the outcome could alter the debtor's rights,
> liabilities, options, or freedom of action (either positively or negatively) and
> which in any way impacts upon the handling and administration of the bankrupt
> estate." *Id.*

*In re Dow Corning Corp.*, 86 F. 3d 482 (6th Circuit 1996), quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 988 (3d Cir.1984).

Here, the Plaintiff's claims do not meet this test, especially in light of the conversion of the case to a Chapter 7 proceeding. The relief requested by Mr. McDonald would not inure to the benefit of the debtors or the estate; Mr. McDonald is requesting damages to be paid to himself as the former Chapter 13 Trustee. If such relief were granted, it would not "alter the debtor's rights, liabilities, options, or freedom of action," nor would any of the relief he seeks "impact the handling and administration of the bankrupt estate" in this case; the debtors, in fact, would gain nothing even if Mr. McDonald won his case. Furthermore, the bankruptcy estate is now a Chapter 7 estate, and a declaration by the Bankruptcy Court that the *Fuller* order no longer applies to Mr. McDonald or that Mr. McDonald did not commit contempt of court would have absolutely no bearing or impact on the handling or administration of the Chapter 7 case. Consequently, even though the underlying issues initially arose in a bankruptcy context, the alleged causes of action are not actually within the scope of the Bankruptcy Court's jurisdiction.

Furthermore, the Trustee has failed to allege a single issue which would provide subject matter jurisdiction to the District Court as a federal question because each of his claims sounds entirely in state law. For example, Mr. McDonald alleges that the Defendants defamed, slandered, libeled, and abused the judicial process in the underlying chapter 13 case. However, each of these causes of action is a state law cause of action, and therefore there is no federal question in dispute.[1]

---

[1] It should be noted that while Mr. McDonald also raises an allegation that the Defendants violated Bankr. R. 9011 in his A.P. complaint, this rule does not give rise to an independent cause of action which could be pursued in an A.P. This is further solidified by Mr. McDonald's failure to comply with the requirements of R. 9011 itself. For example, Parties facing sanctions under Rule 9011 must be provided with "notice and a reasonable opportunity to respond." Bankr. R. 9011(c)(1)(A). Rule 9011(c) sets forth a safe harbor provision, which provides, "a motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate [Rule 9011(b)] . . . . The motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe). the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." *Id.* As Mr. McDonald did not follow any of requirements under the safe harbor provision prior to filing his A.P. against

Furthermore, Mr. McDonald's two claims requesting declaratory/injunctive relief regarding the *Fuller* case are also state law claims. The Trustee wants this Honorable Court to declare that the underlying settlement agreement (and court order codifying it) from *In Re Fuller* does not apply to him, and that his violating this agreement does not qualify as contempt of court. Ignoring for a moment the obvious problem of the mootness of these issues, and the lack of a "case or controversy", the Trustee's claims entirely resolves around whether the underlying settlement agreement from *Fuller*, a valid contract, applies and binds the Trustee and his actions going forward. This is clearly an issue covered by the State of Michigan common law of contracts, not bankruptcy law or any other kind of federal law. The Trustee's continued attempt to mischaracterize this issue is not convincing, because the settlement agreement at issue is a fully binding contract under Michigan Law to which he and his counsel at the time signed, and just because he now wishes to avoid the consequences of settling this prior case and binding his own actions going forward as a result, does not turn his request for a revocation of a settlement agreement into a bankruptcy or federal law matter.

Accordingly, neither the bankruptcy court, nor the District Court, have subject matter jurisdiction over the issues Mr. McDonald has brought forward in his adversary proceeding. As such, this Honorable Court should dismiss Plaintiff's Complaint with prejudice.

## 3.  Mootness of the Plaintiff's request for declaratory and injunctive relief

The Plaintiff's request for a declaration that he did not commit contempt of court (Count IV of the complaint) and his request for a declaration that the *Fuller* order is not applicable to cases other than that of *In re Fuller* (Count I of the complaint) are both clearly moot issues.

> The jurisdiction of federal courts is defined and limited by Article III of the Constitution. In terms relevant to the question for decision in this case, the judicial power of federal courts is constitutionally restricted to 'cases' and 'controversies.' *Flast v. Cohen*, 392 U.S. 83, 94, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Courts must refrain from deciding abstract or hypothetical controversies and from rendering impermissible advisory opinions with respect to such controversies. See *Id*. at 96, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947. "[A] federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them. Its judgments must resolve a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion

the Defendants, and Bankr. R. 9011 does not give rise to an independent cause of action, this particular issue raised by Mr. McDonald would not confer subject matter jurisdiction upon the Bankruptcy Court or the District Court.

advising what the law would be upon a hypothetical state of facts." *Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975) (internal quotation marks omitted). An advisory opinion results if the court resolves a question of law that is not presented by the facts of the case. See, e.g., *In re Michaelson*, 511 F.2d 882, 893 (9th Cir.1975). ("[I]t would be constitutionally improper for us to reach this question since the issue lacks the necessary facts to make it concrete.").

*Earth Island Institute v. Ruthenbeck*, 459 F.3d 954, 961-62 (9th Cir.2006).

Here, there is no actual case or controversy before this court that would allow a decision on the applicability of the *Fuller* order to other bankruptcy cases. While Wildfire Credit Union's request that the ex-parte order be set aside was partially premised on the applicability of the *Fuller* order to the *Wild* case, that request has been deemed moot by the Bankruptcy Court. The underlying bankruptcy case is now a Chapter 7 bankruptcy, and the issues as to whether the order was properly granted, whether the Chapter 13 Trustee made misrepresentations in signing the ex-parte motion, and whether the order itself needed to comply with the *Fuller* order are no longer "live" issues in the bankruptcy case. That is, these issues have no bearing on the administration of the Chapter 7 estate or the completion of the Chapter 7 case; no matter what the court ruled as to the applicability of the *Fuller* order, nothing would change in the Debtors' case at this point. Because a decision on the issue of *Fuller*'s applicability would only affect other, future Chapter 13 cases and not the current pending Chapter 7 case, any declaratory relief would effectively function solely as an unconstitutional advisory opinion.

Equally moot is the question of whether Mr. McDonald acted in contempt of court. That issue was "live" when the motion to set aside the ex-parte order was pending in the Chapter 13 case. Now that that motion has been declared moot by the Bankruptcy Court, there is no need for the Bankruptcy Court, or the District Court, to determine whether or not Mr. McDonald made any misrepresentations in conjunction with the signing of the ex-parte motion. Mr. McDonald is essentially requesting this court to issue a ruling on Wildfire Credit Union's earlier motion in his favor, even though the motion itself is no longer pending before the court. That is, he would force Wildfire Credit Union, and the other Defendants, to continue to litigate this prior motion, even though the Credit Union and Defendants could receive no relief pursuant to such motion because the case had been converted. Such a result would not only lead to a jurisdictional problem, but would also waste judicial resources.

The Plaintiff has indicated that he plans to argue that his requests fall within an exception to the mootness doctrine. Specifically, he argues that the issues are not moot because they are "capable of repetition yet evading review"; a matter of broad public interest; and likely to be repeated between the same parties. To meet the "capable of repetition, yet evading review" exception, the following conditions must be present: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147 (1975).

Here, the Plaintiff can point to no evidence that there will be insufficient time to litigate the *Fuller* issue in a future case. Because a Chapter 13 bankruptcy case lasts between three to five years, there are typically years to determine the propriety of an ex-parte motion to borrow before the issue becomes moot by the debtor exiting bankruptcy. In this case, the debtors had at least two more years before their plan was scheduled to end; the issues became moot only because the debtors chose to convert their case prior to the termination of their plan. Such a conversion case cannot be expected to occur in most cases in which this issue arises. Therefore, the issue does not "evade review," and such an exception to mootness cannot apply.

The Plaintiff also alleges that a broad public interest exists so as to warrant a decision from this court on the applicability of *Fuller*. This alleged exception must also fail. First, no such public interest exists; the only party to whom the *Fuller* order applies is the Chapter 13 Trustee. The applicability of an order to one person cannot be construed as a "public" interest. But more importantly, no such "public interest" exception to mootness exists under federal law.

> "A stand-alone public interest exception to Article III has no meaningful pedigree. The Supreme Court has never recognized any such exception and in several instances has refused to adopt one. 'Although as a matter of Washington state law it appears that this case would be saved from mootness by the great public interest in the continuing issues raised by this appeal, the fact remains that under Art. III even in cases arising in the state courts, the question of mootness is a federal one which a federal court must resolve before it assumes jurisdiction." *DeFunis*, 416 U.S. at 316, 94 S.Ct. 1704; see *Richardson v. Ramirez*, 418 U.S. 24, 36, 94 S.Ct.2655 (1974) ("While the Supreme Court of California may choose to adjudicate a controversy simply because of its public importance, and the desirability of a statewide decision, we are limited by the case-or-controversy requirement of Art. III to adjudication of actual disputes between adverse parties."); *Amalgamated Ass'n v. Wis. Emp't Relations Bd.*, 340 U.S. 416, 418, 71 S.Ct. 373, 95 L.Ed. 389 (1951).

The "lower courts," too "accept the rule that there is no explicit public-interest exception" to Article III in general or the mootness doctrine in particular. See, e.g., *Hickman v. Missouri*, 144 F.3d 1141, 1144 (8th Cir. 1998) (" [T]here is no such exception in [the] federal courts.")…

*Fialka-Feldman v. Oakland University Board of Trustees*, 639 F.3d 711 (6th Cir. 2011). Thus, even if the issue were truly of public interest, such public interest would alone be insufficient to maintain this matter.

Lastly, the Plaintiff's allegation that this matter should be excepted from mootness because there is a chance of reoccurring issues between the same parties is without merit. Much like the public interest argument above, federal courts have not recognized an exception to mootness solely on grounds that the issue may arise again between the same parties. Indeed, repetition is only one of the two elements required under the "capable of repetition yet evading review" exception. If repetition alone were sufficient to escape mootness, the "evading review" element would be superfluous.

Accordingly, Count I and Count IV of Plaintiff complaint cannot be brought forward due to the mootness, and lack of a active case, of the issues raised by Plaintiff. Accordingly, this Honorable Court should dismiss Count I and Count IV of Plaintiff's complaint with prejudice

### 4. Count II And Count III Of Plaintiff's Complaint Should Be Dismissed For Failure To State A Claim Upon Which Relief May Be Granted.

Count II of the Plaintiff's complaint is identified in the caption as a claim for abuse of process against the lawyer and law firm Defendants. Specifically, the Plaintiff seems to allege that the Defendants' motion against the Plaintiff in the Chapter 13 bankruptcy case was filed without their clients' authority, without sufficient evidentiary basis, and for the purpose of generating fees and harassing the Chapter 13 Trustee. Count III alleges similar allegations against Defendant Wildfire. However, none of these allegations are supported by evidence, and they are, in fact, false. But more importantly, the Plaintiff has failed to actually state a claim under "abuse of process".

To "recover upon a theory of abuse of process, a plaintiff must plead and prove (1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding." *Friedman v Dozorc,* 412 Mich 1, 30; 312 NW2d 585 (1981). An "`action for abuse of process lies for the improper use of process after it has been issued, not for maliciously causing it to issue'" *Id.* at 31, quoting *Spear v Pendill,* 164 Mich 620, 623; 130 NW 343 (1911).

17

"Regular and legitimate use of process, though with a bad intention, is not a malicious abuse of process.'" *Spear,* 164 Mich at 624 (1911).

Here, the Plaintiff has failed to identify any specific irregular or abusive act by the Defendants in their use of the legal process. Indeed, the only "process" identified by the Plaintiff is the Defendants' filing of a motion against the Chapter 13 Trustee. Mr. McDonald simply makes conclusory allegations regarding the Defendants' ulterior motives with no facts to support those contentions. But filing a motion alleging contempt of court is not in itself an "abuse", even if (as the Plaintiff alleges) it was filed with bad intent. As one court writes,

> "A meritorious claim of abuse of process contemplates a situation where the defendant has availed himself of a proper legal procedure for a purpose collateral to the intended use of that procedure, e.g., where the defendant utilizes discovery in a manner consistent with the rules of procedure, but for the improper purpose of imposing an added burden and expense on the opposing party in an effort to conclude the litigation on favorable terms. [*Vallance v. Brewbaker,* 161 Mich.App. 642, 646, 411 N.W.2d 808 (1987).]
>
> In a case alleging abuse of process, the pleadings must allege with specificity an act committed in the use of process "that is improper in the regular prosecution of the proceeding." *Early Detection Ctr., P.C. v. New York Life Ins. Co.,* 157 Mich. App. 618, 629, 403 N.W.2d 830 (1986). A complaint must allege more than the mere issuance of the process, because an "action for abuse of process lies for the improper use of process after it has been issued, not for maliciously causing it to issue." *Friedman v. Dozorc,* 412 Mich. 1, 31, 312 N.W.2d 585 (1981) (quotation marks and citation omitted). A claim asserting nothing more than an improper motive in properly obtaining process does not successfully plead an abuse of process. *Young v. Motor City Apartments Ltd. Dividend Housing Ass'n No. 1 & No. 2,* 133 Mich. App. 671, 681, 350 N.W.2d 790 (1984)... Moreover, "the ulterior purpose alleged must be more than harassment, defamation, exposure to excessive litigation costs, or even coercion to discontinue business." *Early Detection Ctr.,* 157 Mich.App. at 629-630, 403 N.W.2d 830.

*Dalley v. Dykema Gossett, PLLC*, 788 N.W.2d 679, 695 (2010). This allegation must be dismissed therefore, because the Plaintiff has failed to allege any irregular act in the use of the legal process; the plaintiff is only alleging that the motion was brought for an improper purpose. The Plaintiff also alleges in Count II that the Defendants violated Bankruptcy Rule of Procedure 9011. As will be discussed further below, all of the Defendants pleadings were fully supported by evidence, or undisputed facts. Furthermore, Plaintiff fails to recognize that Bankruptcy Rule of Procedure 9011 sanctions are not, in and of themselves, a cause of action. Even if rule 9011

18

WAS a cause of action, Plaintiff has utterly failed to comply with the requirements for a Motion for sanctions under Rule 9011, and therefore his claims in this regard must be dismissed.

Rule 9011 states the following:  "(c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation. (1) How Initiated. (A) By Motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 7004. The motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected, except that this limitation shall not apply if the conduct alleged is the filing of a petition in violation of subdivision (b). If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees…"

In the case before the Court, the Trustee never filed a separate motion, as required under 9011(C)(A), nor did the Trustee ever contact any of the Defendants to request that the pleadings the Trustee now complaints of be altered, revoked, or modified in any way as is required under the "safe harbor" provision contained in subdivision (c)(1)(A). See Notes of Advisory Committee on Rules—1997 Amendment.  Without submitting a proper 9011 motion, and providing Defendants with 21 days notice as required under the rule, Plaintiff's request for relief in this regard is completely barred by law.  "...strict compliance with the safe harbor rule is required. As we explained in *Schaefer Salt,* "[i]f the twenty-one day period is not provided, the motion must be denied." In Re Schaefer Salt Recovery, Inc., 542 F.3d 90, 99 (3rd Cir. 2008). Rule 9011 "imposes mandatory obligations upon the party seeking sanctions, so that failure to comply with the procedural requirements precludes the imposition of the requested sanctions."" *In Re Miller*, 730 F.3d 198, 204-205 (3rd Cir. 2013); *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.,* 369 F.3d 385, 389 (4th Cir.2004) (en banc).

In fact, the Trustee in this case did exactly the opposite, immediately filing aggressive motions and responses to the Defendants pleadings, asking for sanctions and striking of pleadings, without even discussing the matter with Defendants first, as is required under the federal and bankruptcy rules. Accordingly, sanctions are not warranted against any of the Defendants for a violation of rule 9011, both because no such violation occurred, and because the Trustee failed to follow the proper procedure to pursue such sanctions. Accordingly, Count II of the Plaintiff's complaint should be dismissed with prejudice.

Lastly, the Plaintiff has included in Count II a number of allegations that seemingly support his contention that the Defendants violated Rule 9011 and abused the legal process, including an allegation that the Defendants acted without authority from their client, that their actions were motivated by greed, that their motion against the Chapter 13 Trustee was filed in retaliation against the Trustee for filing a motion for reconsideration, that the Defendants violated several civility principles, that they filed their motion without evidentiary support, and that the Debtors sought to undermine the entire local bankruptcy system. No factual or evidentiary support is provided for any of these assertions, and such pleading is insufficient to maintain a claim against the Defendants. See *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

Defendant contests all of these characterizations, and asserts that it never acted without client authority in the underlying matter. Furthermore, even if taken as true, such allegations are not actionable in of themselves. The Plaintiff cannot demonstrate any injury stemming from its allegation that the Defendants lacked authority from their client to pursue a motion against the Trustee; only the client itself would seemingly possess such a claim. Similarly, an accusation that the Defendants sought only to increase their billable hours fails as a claim for reason that any harm from such an allegation inures only to the harm of the client. And a purported violation of the civility rules is not grounds for an independent action against the Defendants; there is no case of action or claim that a lawyer was uncivil.

For all of these reasons, Count II and Count III of the Plaintiff's complaint must be dismissed with prejudice.

5. Plaintiff's Defamation, Libel, and Slander claims fail to state a claim upon which relief may be granted.

    a. The Absolute Litigation Privilege bars all of Plaintiff's tort claims.

Statements made by judges, attorneys, and witnesses during the course of judicial proceedings are absolutely privileged if they are relevant, material, or pertinent to the issue being tried. *Mundy v. Hoard*, 216 Mich. 478, 491, 185 N.W. 872 (1921); *Couch v. Schultz*, 193 Mich.App. 292, 294-295 (Mich App. 1992). This privilege also immunizes statements made, among others, grand and petit jurors, witnesses, counsel in the conduct of a case, parties in private litigation, defendants and instigators of prosecution. See 3 Restatement Torts, 2d, §§ 585-589, pp 244-252. "An absolutely privileged communication is one for which no remedy is provided for damages in a defamation action because of the occasion on which the communication is made." *Couch*, at 294-295. "A privileged occasion is an occasion where the public good requires that a person be freed from liability for the publication of a statement that would otherwise be defamatory." *Id.* If a statement is absolutely privileged, it is not actionable even if it was false and maliciously published. *Id.*; *Tocco v. Piersante*, 69 Mich.App. 616, 629, 245 N.W.2d 356 (1976). Further, "immunity extends to every step in the proceeding and covers anything that may be said in relation to the matter at issue, including pleadings and affidavits." Id. at 295, 483 N.W.2d 684. See *also Sanders v. Leeson Air Conditioning Corp.*, 362 Mich. 692, 695-696, 108 N.W.2d 761 (1961).

The purpose of absolute immunity under the judicial proceedings privilege, as it applies to attorneys, is to promote the public policy "of securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients." 3 Restatement Torts, 2d, § 586, comment a, p. 247. In *Couch*, supra at 295, 483 N.W.2d 684, this Court stated that "[t]he judicial proceedings privilege should be liberally construed so that participants in judicial proceedings are free to express themselves without fear of retaliation." A presumption of relevancy of the statements arises once it is established that the statements were made during the course of a judicial proceeding. *Pagoto v Hancock*, 41 Mich App 622, 623 (1972).

In his complaint, Plaintiff alleges that statements by Wildfire, and their attorneys on behalf of Wildfire, in pleadings in the underlying Ch. 13 case constitute defamation, libel, and slander. However, Plaintiff only alleges that these statements were made via "various pleadings" and "in court" and makes no allegation that any of the Defendants made any "defamatory," "libel,", or "slanderous," statements outside of the underlying litigation. As such, these communications are

entitled to absolute immunity unless they are not relevant, material, or pertinent to the issues before the Court when they were made. See *Couch*, at 294-295.

At the time the various pleadings that Plaintiff complains of were filed, Defendant Wildfire was pursuing its legal right to oppose a post-petition car purchase in the underlying Ch. 13 case, via an objection and a Motion to set aside a prior Court Order granting the Debtors authority to purchase a new vehicle. See Exhibit 10, 12, 14. All of the statements which Plaintiff complains of were clearly relevant and pertinent to the issues then before the Court: Whether the underlying vehicle purchase should be rewound, the prior order set aside, whether the Trustee misrepresented information to the Court in a pleading; and whether the Trustee complied with his duties under a prior settlement agreement and court order pertinent to the case from *In Re Woodrow Fuller*. *Id.* As such, these statements were the very definition of relevant. Furthermore, a presumption of relevancy of the statements arises once it is established that the statements were made during the course of a judicial proceeding, and Plaintiff has made no allegation, and provided no evidence, why this presumption should not be upheld. See *Pagoto v Hancock*, 41 Mich App 622, 623 (1972).

Accordingly, the Defendants' various statements to which Plaintiff complains are entitled to absolute immunity under the judicial proceedings privilege and none of the Defendants can be held liable for defamation, libel, or slander based on these statements. Plaintiff's claims on Count V, VI, and VII should be dismissed with prejudice.

b.     The Statements Plaintiff Complains of Made By Defendants In The Underlying Litigation Are True, Or Substantially True, And Plaintiff's Attempts To Mischaracterize Them Do Not Change Their Nature.

Even if the absolute litigation communication did not apply to the pleadings in this matter, Plaintiff still would have failed to state a claim upon which relief may be granted, because Defendants statements in the pleadings he complains of were true, or substantially true.

Michigan Courts continuously have held that substantial truth is an absolute defense to a defamation claim. See *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516-517 (1991); *Rouch v. Enquirer & News of Battle Creek (After Remand)*, 487 N.W.2d 205, 258-259 (1992); See *Collins v. Detroit Free Press, Inc.*, 627 NW 2d 5, 9 (Mich. App. 2001). Michigan courts have held that "'[s]light inaccuracies of expression are immaterial provided that the defamatory charge is true in substance.'" *Rouch,* at 258-259, quoting 3 Restatement Torts, 2d, § 581A, comment f, p. 237.

In the Plaintiff's complaint, he alleges "Defendants filed or caused to be filed various pleadings with this Court in which they alleged that the Trustee intentionally and unlawfully acted in contempt of Court and committed Fraud on the Court with respect to this Debtors' and other unrelated Debtors' post-petition vehicle purchases…. Defendants further filed or caused to be filed various pleadings with this Court in which they alleged that the Trustee intentionally and unlawfully colluded with third parties to commit Fraud on the Court with respect to this Debtors' and other unrelated Debtors' post-petition vehicle purchases… These various statements were unsupported by the facts in this case and the other related cases and in fact were false and were made without any independent inquiry or investigation into their factual basis." Line 92 & 97 of Plaintiff's complaint.

In his A.P. Complaint, the Trustee asserts that the Defendants accused the Trustee of conspiring or colluding with the Bankruptcy Court, or third parties, in conjunction with filing of the Ex-Parte Motion to borrow in the underlying case. This assertion by the Trustee is false. Despite his entire A.P. Complaint being premised on statements by the Defendants in pleadings being false, Plaintiff does not attach to his Complaint any of the pleadings he complains of, nor does he quote the statements from the pleadings in question. See Plaintiff's Complaint. This is because if Plaintiff had done so, he would have exposed the complete frivolousness of his allegations. Nowhere in any pleadings filed by the Defendants in the underlying matter do the Defendants assert that the Trustee conspired or colluded with the Court, or any third party, in any way in conjunction with the Ex-Parte Motion to borrow in the underlying case. See Exhibit 10, 12, 14, 15, 16, 19, 21.

The Defendants did suggest that the Trustee committed a fraud upon the Court by signing the Ex-Parte Motion in the underlying case, which stated within that it was in compliance with the *Fuller* requirements, when the Ex-Parte Motion at issue in fact did not comply with the *Fuller* requirements. *Id.* The Defendants did assert that the Trustee's signing of the Ex-Parte Motion and authorizing its submission to the Court was done with the intent that the Court would, in reliance on the Trustee's signature, enter a corresponding Ex-Parte Order permitting the borrowing requested, and that such action was to eliminate the requirement that debtors counsel schedule the matter for hearing which would have been necessary if the Trustee had not signed the Ex-Parte Motion and authorized its submission to the Court. As such, these allegations run directly contrary to the Trustee's assertion that the Defendants were accusing the Trustee of conspiring or colluding with the Court in conjunction with the Ex-Parte Motion. In effect, the Defendants assertions were exactly the opposite in asserting that the Trustee's signing the Ex-Parte Motion was in effect misleading the

23

Court to believe that the Trustee had properly vetted the proposed vehicle purchase and financing in accordance with the *Fuller* requirements, with which the Trustee was required to comply. And in the attached exhibits, the pleadings to which Plaintiff complains, you can see the Defendants never accused the Trustee of a "conspiracy" or "colluding" with third parties, and the Defendants never alleged that the Bankruptcy Court engaged in any misconduct. *Id.*

Furthermore, a viewing of these pleadings shows that the only actions Defendants accused Plaintiff of where the following: "…Debtors' counsel filed an Ex-Parte Motion for an Order Granting Debtors Authority to Finance the Purchase of the 2014 GMC Acadia. The Ex-Parte Motion was signed by Debtors' counsel and by the Chapter 13 Trustee…. The Ex-Parte Motion reviewed, approved, and signed by the Chapter 13 Trustee in this case did not contain the information mandated by the settlement agreement from Fuller, nor the Fuller Order. In addition, the Ex-Parte Motion in this case affirmatively stated that the Fuller disclosures were contained in it, which was not true. Nonetheless, the Trustee, after reviewing the Ex-Parte Motion, signed the same, approving its submission to the Court, and in effect, represented that the Motion contained the information mandated by the Fuller Order." (Internal citations omitted) Exhibit 14.

In short, the only facts the Defendants asserted were that the Trustee signed a Ex-Parte Motion (which the Trustee admits he did), that the Ex-Parte Motion affirmatively stated that the Fuller disclosures were complied with in the Motion (which it does), and that the Trustee, therefore, breached the settlement agreement and court order codifying that agreement when he signed the Ex-Parte Motion (which he clearly did). *Id.* Despite this clearly truthful and factually supported statement, Plaintiff wants to mischaracterize and attack Defendants because of the Defendants legal interpretation as applied to these facts. Defendants did take the position in the underlying litigation that the facts described above entitled Wildfire to relief under F.R.C.P. 60(b)(3), and that the Trustee's actions qualified as misconduct, misrepresentation, or fraud on the Bankruptcy Court. Exhibit 10, 12, 14, 21. However, this legal interpretation of the facts underlying the pleadings is not, in and of itself, a factual allegation. It is simply a legal interpretation of the already discussed facts. As this is the case, each of the facts underlying the Defendants position in the underlying case are either fully supported by evidence, or undisputed. For example, the Trustee has never contended that he did not sign the Ex-Parte Motion. The Trustee has never contended that the settlement agreement from *Fuller*, and the court order codifying it, does not exist. While the Trustee now is taking the position that this legally binding contract, and Court Order, somehow do

24

not bind him, he does not deny their existence, and therefore Defendants reliance on these documents is in no way improper, and certainly is in no sense untrue.

The Defendants deny the Trustee's assertion that the Defendants pleadings were based upon unsupported claims or facts for the reasons hereinabove set forth. In fact the Trustee is repeatedly attempting to mischaracterize and misstate what the Defendants asserted in their pleadings, all of which pleadings were directed toward the setting aside of the purchase and financing of the 2014 GMC Acadia at issue in this case, and all of which assertions were germane and directed at the salient legal issues properly before the Bankruptcy Court relating to the proper protocol for a request for a post-confirmation financing for the purchase of a vehicle. See Exhibit 10, 12, 14, 15, 16, 19, 21.

Accordingly, the Defendants' various statements in pleadings were fully supported by the facts in the record, or were undisputed in the underlying litigation, and therefore each of the Defendants statements in pleadings was true or substantially true. As such, none of the Defendants can be held liable for defamation, libel, or slander based on these statements. Plaintiff's claims on Count V, VI, and VII should be dismissed with prejudice.

## CONCLUSION

WHEREFORE, Defendant Wenzloff & Wenzloff P.L.C. respectfully requests that this Court dismiss Plaintiff Thomas McDonald's A.P. Complaint in its entirety, with prejudice, and grant Defendants costs and reasonable attorney fees incurred in responding to the same along with whatever other relief this Honorable Court believes equity requires.

Respectfully submitted,

DATED:    December _12_, 2017

Paul Wenzloff (P27662)

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION- BAY CITY**

IN RE:

JONATHAN WILLIAM WILD                           Bk. Case No. 14-21888-dob
TAMARA JEAN MOORE,                              A.P. Case No. 17-02118-dob
     Debtors                                  Hon. Daniel S. Opperman

THOMAS MCDONALD, JR.
CHAPTER 13 TRUSTEE
     Plaintiff,                               Case No. 1:17-cv-13858-TLL-PTM
                                               Honorable Thomas L. Ludington
     v.                                       Magistrate Patricia T. Morris

PAUL WENZLOFF,
JOSHUA FIREMAN,
WENZLOFF & WENZLOFF P.L.C, and
WILDFIRE CREDIT UNION,
     Defendants.

---

Paul Wenzloff & Joshua Fireman          Marilyn Adamczyk
Wenzloff & Wenzloff P.L.C.              Attorney for Chapter 13 Trustee
Attorneys for Wenzloff & Wenzloff P.L.C.  303 E. Gary Street
903 North Jackson Street, Bay City, MI 48708   Bay City, MI 48706
Tel.: (989) 893-95111 | Fax: (989) 893-6988    Tel.: (989) 225-8165
wenzloffbankruptcy@sbcglobal.net        marilynadamczyk@yahoo.com

---

Michael J. Ryan
Kus, Ryan & Associates PLLC
Attorney for Wildfire Credit Union
2851 High Meadow Circle, Ste. 120
Auburn Hills, MI 48326
Tel.: (248) 364-3090
mryan@krslaw.biz

---

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date set out below I served a copy of the following document(s) upon each of the parties listed below.

- ***Defendant Wenzloff & Wenzloffs' Motion to Dismiss Plaintiff's Complaint***

1

- *Brief In Support of Defendant Wenzloff & Wenzloffs' Motion to Dismiss Plaintiff's Complaint*
- *Index of Exhibits*
- *Exhibits 1 through 23*

Served electronically via the Court's ECF system:

| | |
|---|---|
| Marilyn Adamczyk: | marilynadamczyk@yahoo.com |
| Michael J. Ryan: | mryan@krslaw.biz |
| Paul E. Wenzloff: | wenzloffbankruptcy@sbcglobal.net |
| Joshua R. Fireman: | wenzloffbankruptcy@sbcglobal.net |

Served via United States Postal Service with the proper amount of postage affixed thereon:

Marilyn Adamczyk
303 E. Gary Street
Bay City, MI 48706

Michael J. Ryan
Kus, Ryan & Associates PLLC
2851 High Meadow Circle, Ste. 120
Auburn Hills, MI 48326


DATE: 12/13/17                    _Joy E Clark_

JOY E. CLARK, Employee of
Wenzloff & Wenzloff, P.L.C.
903 North Jackson Street, Bay City, MI 48708
(989) 893-9511
wenzloffbankruptcy@sbcglobal.net

2